UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VIRGINIA ALLEN,           :
                          :CIVIL ACTION NO. 3:04-CV-1515
    Plaintiff,       :
                          :
        v.          :(JUDGE CONABOY)
                          :
VERIZON PENNSYLVANIA, INC.,  :
                          :
    Defendant.       :

---

**MEMORANDUM AND ORDER**

Here we consider "Motion of Defendants Verizon Pennsylvania,

Inc., Colleen Torcasi and Elaine Fisher for Summary Judgment,"

(Doc. 39).  Plaintiff filed the underlying action on July 13, 2004,

pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"),

43 Pa. C.S. § 951 *et seq.*  Defendants filed the motion under

consideration on June 15, 2005, (Doc. 39), accompanied by a

supporting brief, (Doc. 39-9).  Plaintiff filed a responsive brief

on June 30, 2005, (Doc. 44), and Defendants filed a reply on July

11, 2005, (Doc. 45).  Therefore, this matter is now ripe for

disposition.

After reviewing the record, we conclude that Defendants have

not met their burden of establishing that no genuine issues of

material fact exist and Plaintiff has produced sufficient evidence

to survive summary judgment on Count I based on discrimination and

failure to provide a reasonable accommodation, Count II and Count

1

III based on discrimination, failure to provide a reasonable accommodation and retaliation.  Therefore, summary judgment is not proper on these claims.  However, Plaintiff has not produced sufficient evidence to survive summary judgment on her claim in Counts I and III for harassment or on Count IV of her Complaint. Therefore, Defendants' motion will be granted as to Counts I and III based on harassment and Count IV.

## I. Background

The following facts are derived primarily from Defendants' Statement of Undisputed Facts, (Doc. 39-2), and Plaintiff's Statement of Facts in Dispute, (Doc. 44-4).

Plaintiff worked for Defendant Verizon Pennsylvania, Inc. ("Verizon") from October 1990 to November 2003.  Plaintiff left her employment at Verizon when she participated in an exit incentive program, the Enhanced Income Security Plan ("EISP").

Plaintiff has a long-term hearing impairment which preceded her employment at Verizon.  She did not wear a hearing aid until September of 2002.  She wore the hearing aid in her right ear, in which she had a 25% hearing loss.  She has only 20% hearing in her left ear.  Plaintiff's position at Verizon, Maintenance Administrator, required her to use a headset to take customer calls.  She needed her hands free because she would type relevant information while speaking with the customer.

After learning that she would have to wear a hearing aid, but

2

before actually getting it, Plaintiff informed her supervisor that she would need a different headset.  There is disagreement about what was said to whom and when regarding the need for this accommodation and the responses to the request.

It is not disputed that alternative headsets provided were not acceptable to Plaintiff.  Some time around late October 2002 Plaintiff began taking calls on a speaker phone in a room in the office which Defendant refers to as the "CAG Training Room" and Plaintiff refers to as a closet or utility/storage room.  Plaintiff initially agreed to work in this space and was there for approximately one month.  While working there, a coworker placed a sign on the door which read "Shhh Virginia is sleeping, No Visitors Allowed."  A sign saying "do not disturb" was also placed on the door.  Plaintiff stopped working in the separate area because of noise feedback with her hearing aid.

In a correspondence Defendants believe to be dated October 22, 2002, Plaintiff requested to perform offline work and questioned why she had not received CAG training (CAG seems to stand for "consumer advocate group").  Regarding CAG training, Plaintiff was told that she was out of the office when her turn for training arose and she was not being scheduled for CAG training because her overall performance rating was a "Does Not Meet" ("DN").  Plaintiff asserts that before she requested accommodation, she was rated ER (exceeds requirements).  She also asserts that her performance was

3

slowed when she used an ill-fitting headset provided as an accommodation because she had to hold it in place and, therefore, only had one hand free for typing.  Regarding offline work, Plaintiff was told this accommodation was not available to her because she did not have a restriction that she could not talk with customers.[1]

Plaintiff returned to the regular work area at the end of October 2002 - the parties debate what headset she used at the time.  It is also debated whether Plaintiff took a two-month leave beginning on November 4, 2002.  However, it is not debated that around January 2003 Plaintiff told her supervisor about fit problems with the headset she was then using.  She asked to use a speaker phone at her desk, but the request was denied on the basis that it would interfere with other Maintenance Administrators.

In or around April 2003, during a meeting with Plaintiff, supervisory personnel told Plaintiff that if she refused to work with the headset she had, she would have to go home without pay and it would be an unexcused absence.  At the same meeting, she was also repeatedly asked whether she was refusing to do her job. Plaintiff was not sent home and nothing more came of this incident.

The union representative obtained another headset which Plaintiff used until June 2003 when Verizon provided her with a

---

[1] What is meant by "offline work" is not entirely clear but seems to mean, in part, that the employee can use a phone rather than a headset to perform her job.

third headset.  Plaintiff reported to someone she believed to be in management that the headset provided was too heavy and caused her pain and headaches.  This was the final headset provided Plaintiff.

Plaintiff took a voluntary leave of absence in July 2003 to care for her foster children.  The leave of absence continued until Plaintiff's employment ended in November 2003 as a result of her participation in the EISP program.

In the fall of 2003, Verizon offered Plaintiff and other eligible employees the opportunity to take advantage of the EISP. Plaintiff was part of the program but alleges that it was not voluntary.

Plaintiff filed the instant action on July 13, 2004.  The Complaint contains the following counts: Count I - violation of the ADA based on disability discrimination, harassment and failure to provide a reasonable accommodation; Count II - retaliation for exercising ADA rights; Count III - violation of the PHRA on the same grounds set out in Count I; and Count IV - violation of the PHRA against individual Defendants Elaine Fisher and Colleen Torcasi.  (Doc. 1.)

Citing five specific issues, Defendants maintain they are entitled to summary judgment because Plaintiff has failed to present evidence sufficient to meet the essential elements of her claims.  (Doc. 39-9 at 2.)

5

## II. Discussion

### A.   *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(*citing* Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

6

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex*, 477 U.S. at 324.  When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

7

**B.    *Grounds for Summary Judgment***

Defendants present five grounds upon which they assert they are entitled to summary judgment. (*See*, Doc. 39-9.)  They allege that Plaintiff has failed to present evidence to meet the essential elements of the following claims: 1) disability based on constructive discharge; 2) disability based on failure to accommodate; 3) harassment; 4) retaliation; and 5) individual liability against Defendants Torcasi and Fisher. (*Id.*)

**1.    *Discrimination Claims***

Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A plaintiff presents a *prima facie* case of discrimination under the ADA by showing: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform essential functions of the job, with or without reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999).  The third prong "encompasses not only adverse actions motivated by prejudice and fear, but also failing to make reasonable accommodation for a

8

plaintiff's disabilities." *Id.*

Here Plaintiff's discrimination claim is based on her allegations that Defendants failed to provide a reasonable accommodation of her disability and she was subject to adverse employment action because of her disability.  The latter is referred to as a disparate treatment claim.  *See, e.g.*, *Shaner v. Sythes*, 204 F.3d 494, 500 (3d Cir. 2000).  Defendants concede that Plaintiff can satisfy the first and second prongs of her *prima facie* case.  (Doc. 39-9 at 4.)  They argue Plaintiff cannot establish the third prong because she has not been subject to an adverse employment action and Defendants did not fail to reasonably accommodate her disability.  (*Id.*)  They finally argue that, if the Court finds Plaintiff can establish a *prima facie* case, Plaintiff cannot show that Defendants' legitimate reasons for their actions are pretextual.  (*Id.* at 15.)

Defendants assert that the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is the proper framework within which to assess Plaintiff's claims.  (*See* Doc. 39-9 at 3.)  Plaintiff avers that *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), provides the applicable analysis.  (Doc. 44 at 17.)

Before discussing the issue of whether *McDonnell Douglas* or *Price Waterhouse* applies here, we note that a burden shifting framework applies to a disparate treatment claim, but not to a

failure to accommodate claim.  *See Bultemeyer v. Fort Wayne Cmty. Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996); *see also Norman v. Univ. of Pittsburgh*, No. Civ. A. 00-1655, 2002 WL 32194730, at \*\*13-14 (W.D. Pa. Sept. 17, 2002); *Warner v. Montgomery Twp.*, No. Civ. A. 01-3309, 2002 WL 1623774, at \*7 n.8 (E.D. Pa. July 22, 2002); *Ferreri v. Mac Motors*, 138 F. Supp. 2d 645, 651 n.1 (E.D. Pa. 2001); *Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, No. Civ. A. 96-5682, 1997 WL 717053, at \*10 (E.D. Pa. Nov. 17, 1997).  Instead, to survive summary judgment on a failure to accommodate claim, the plaintiff must present facts which, if taken as true, could establish failure to accommodate in violation of the ADA.  *See*, *e.g.*, *Walton*, 1997 WL 717053, at \*10 (citation omitted).

Because it is an analytically distinct claim, we will first address Plaintiff's assertion that Defendants violated the ADA because they failed to accommodate her disability.

a.    ***Discrimination Based on Failure to Accommodate***

We conclude that summary judgment is not appropriate on Plaintiff's failure to accommodate claim.

Under the ADA, an employer engages in unlawful discrimination by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue

hardship on the operation of the business of such covered entity."
42 U.S.C. § 12112(b)(5)(A).  An accommodation under the ADA may
include "job restructuring, part-time or modified work schedules,
reassignment to a vacant position, acquisition or modification of
equipment or devices, appropriate adjustment or modifications of
examinations, training materials or policies, the provision of
qualified readers or interpreters, and other similar accommodations
for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  The
Seventh Circuit Court of Appeals has noted "[i]t is plain enough
what 'accommodation' means.  The employer must be willing to
consider making changes in its ordinary work rules, facilities,
terms, and conditions in order to enable a disabled individual to
work."  *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d
538, 543 (7th Cir. 1996).  "The question of whether a proposed
accommodation is reasonable is a question of fact."  *Williams v.
Philadelphia Housing Auth.*, 380 F.3d 751, 771 (3d Cir. 2004).

The parties are required to engage in an interactive process
to find a reasonable accommodation.  *See*, *e.g.*, *Taylor*, 184 F.3d at
317.  This means they must make a good-faith effort to seek
accommodations.  *Id.*  In this process, "the employer must make
every effort to determine the appropriate accommodation."  29
C.F.R. pt. 1630, app.  The Third Circuit Court of Appeals has
stated it is the employer's duty to help the disabled employee
devise accommodations.  *See*, *e.g.*, *Williams*, 380 F.3d at 772.

Further, it is the employer's responsibility to gather needed
information: "Once the employer knows of the disability and the
employee's desire for accommodations, it makes sense to place the
burden on the employer to request additional information that the
employer believes it needs." *Taylor*, 184 F.3d at 315.  When a
requested accommodation is not succeeding or is not possible, an
employer has a duty to explore further arrangements to reasonably
accommodate the employee's disability.  *Id.; Humphrey v. Memorial
Hospital Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001).

    If an employee has made a facial showing that a requested
accommodation is possible, "the defendant then bears the burden of
proving, as an affirmative defense, that the accommodation[]
requested by the Plaintiff [is] unreasonable or would cause an
undue hardship on the employer." *Gaul v. Lucent Technologies,
Inc.*, 134 F.3d 576, 580-81 (3d Cir. 1998); 42 U.S.C. §
12112(b)(5)(A).

    Here, Plaintiff argues that Defendants failed to accommodate
her disability because she did not receive a properly fitting
headset and she was refused her request to perform offline work.
(Doc. 44 at 26-27.)  Defendants maintain this claim cannot go
forward because Plaintiff did not properly participate in the
interactive process: she did not suggest a certain type of headset,
take any of the headsets provided to her audiologist for his
comments, never asked her audiologist to help find a suitable

12

headset, and "never personally made any other efforts to find a headset that would allow her to perform the functions of her position." (Doc. 45 at 11.)

While it may be that Plaintiff's participation in the interactive process was weak, at this stage of the proceedings we cannot say that she acted in bad faith as Defendants allege. Defendants do not aver that they sought the information which they now assert should have been provided by Plaintiff. Regarding the interactive process, as with many discrimination cases, the facts of this case do not fit into a neat package. Rather, the facts show that Plaintiff first requested a headset accommodation and, when there was difficulty finding an adequate headset, she requested to do offline work. Although Defendants tried to find a properly fitting headset over a period of time, they did not allow her alternate offline work accommodation. Plaintiff did not inform her immediate supervisor that the headset last provided was not adequate but alleges to have told someone she believed to be in management. (Doc. 39 Ex. B at 115, 159-60.) Approximately one month after being given the final headset, Plaintiff began a leave of absence followed by her acceptance of the EISP.

Based on these facts, it appears that there were breakdowns in the interactive process. The issue of whether there was bad faith on either side requires further development and may hinge on credibility. A related issue is whether Plaintiff's alleged

failure to properly participate in the interactive process, if such failure is found, may implicate the notion of futility.  *See*, *e.g.*, *Bultmeyer*, 100 F.3d at 1285; *Davoli v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999).

Equally important to our decision of whether summary judgment is appropriate on Plaintiff's accommodation claim is the fact that, in their discussion of this issue, Defendants do not address Plaintiff's claim of failure to accommodate based on her request to do offline work.  (Doc. 39-9 at 10-14; Doc. 45 at 11-13).  They do address Plaintiff's request in the "pretext" discussion in their reply brief but only in a conclusory manner.  (Doc. 45 at 15.)

Plaintiff points to evidence that offline work was requested and available.  (*See*, *e.g.*, Doc. 44 at 11-12, 27.)  Plaintiff's supervisor stated that Plaintiff was not given the offline assignment accommodation because her request was in regard to her hearing aid and finding a compatible headset.  (Doc. 39 Ex. M.) In their discussion of pretext, Defendants also aver that offline work is an accommodation for a medical restriction Plaintiff did not have - a restriction precluding her from talking to customers. (Doc. 45 at 15.)

Neither rationale limits Defendants' potential liability on this issue.  First, Defendants had the duty to pursue alternative accommodations when the headset accommodation was not succeeding. Second, because the requested offline accommodation had not

previously been used to accommodate someone in Plaintiff's position does not mean the requested accommodation is unreasonable.  Rather, to be relieved of liability, the requested accommodation must be an "undue hardship."  Because Plaintiff has presented evidence that offline work was possible, the responsibility of establishing that the accommodation would be unreasonable or an undue hardship rests with Defendants.  This issue has not been raised or briefed. Therefore, whether Plaintiff's alternatively requested accommodation was reasonable is an issue which cannot be decided on summary judgment.

We do not doubt Defendants attempted to accommodate Plaintiff's disability, but the question is not whether they took any steps toward accommodating Plaintiff.  Rather, the pertinent question is whether Defendants *did enough* to accommodate Plaintiff's disability given the relevant legal framework.  We conclude that, within this framework, based on the record before us we cannot say that Defendant has shown there is no genuine issue of material fact regarding Plaintiff's reasonable accommodation claim. Therefore, summary judgment is not proper on this claim and Count I goes forward insofar as it alleges discrimination based on failure to provide a reasonable accommodation.

**b.    *Discrimination Based on Disparate Treatment***

**i.    *Analytical Framework***

The evidentiary framework of a plaintiff's disability claim

15

based on disparate treatment will vary depending on whether the claim is characterized as a "pretext" or "mixed-motive" claim.  A pretext claim is analyzed under the *McDonnell Douglas* framework and a mixed-motive claim is analyzed under *Price Waterhouse*.[2]  The distinguishing factor is that in a *Price Waterhouse* mixed-motive claim, the plaintiff has produced direct evidence of discrimination (or retaliation).  *Price Waterhouse* directs that a case need not be labeled as pretext or mixed-motive from the beginning and presenting cases in the alternative is acceptable.  *Price Waterhouse*, 490 U.S. at 247 n.12.  The Third Circuit Court of Appeals has similarly noted that "before granting summary judgment and removing a case from the hands of a jury, the District Court ought to consider whether a plaintiff's claim would survive under either a pretext or Price Waterhouse theory."  *Hankins v. City of Philadelphia*, 189 F.3d 353, 364 n.6 (3d Cir. 1999).

In analyzing an ADA discrimination or retaliation claim under either the *McDonnell Douglas* or *Price Waterhouse* scheme, the plaintiff has the burden of establishing her *prima facie* case, the elements of which vary depending on the cause of action.  *See, e.g., Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).  In a *McDonnell Douglas* pretext analysis, once the

---

[2] The Third Circuit Court of Appeals has often noted that these labels are misleading.  *See, e.g., Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 n.4 (3d Cir. 2003) (*citing Watson v. Southeastern Pennsylvania Trasp. Auth.*, 207 F.3d 207, 215 n.5 (3d Cir. 2000)).

plaintiff establishes her *prima facie* case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for its adverse employment action. *Id.* This is simply a burden of production. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the third step of the analysis, the burden shifts back to the Plaintiff to show that discriminatory animus had a determinative effect on the employer's decisionmaking process. *Id.*

> Under the mixed-motive *Price Waterhouse* analysis, "a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." *Shellenberger* at 187-88 (*quoting Watson v. Southeastern Pennsylvania Trasp. Auth.*, 207 F.3d 207, 215 (3d Cir. 2000)). [O]nce a plaintiff demonstrates that the adverse action is the result of mixed motives (i.e., that it is the 'result of multiple factors, at least one of which is illegitimate' and the illegitimate factor played 'a motivating part' in the adverse decision), the burden shifts to the employer to persuade the jury by a preponderance of the evidence that it would have reached the same decision even if the protected trait had not been considered. *Price Waterhouse*, 490 U.S. at 244-45. This shift in the burden of persuasion makes an employer potentially liable upon a causation showing – that an illegitimate criterion was a motivating, although not a determinative, factor in the adverse employment decision – that is less exacting than the causation test in the usual "pretext" case, where consideration of a protected trait must be shown to be a determinative factor in the adverse action. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

*Watson*, 207 F.3d at 215.

The Third Circuit Court of Appeals has described the "direct

evidence" a plaintiff must produce at the summary judgment stage to warrant a mixed-motive analysis: the evidence must be "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Buchsbaum v. University Physicians Plan, 55 Fed. Appx. 40*, 45 (3d Cir. 2002) (Not Precedential) (*citing Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994).   The Circuit Court has also looked to Justice O'Connor's concurring opinion in *Price Waterhouse* for guidance in what type of evidence is needed to make out a mixed-motives case.

> [S]tray remarks in the workplace, while perhaps probative of a [discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard; . . . What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.

*Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995) (*quoting Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring) (emphasis and alterations in *Starcefski*).

Here the parties argue which theory is applicable.  Plaintiff points to the instance where she was asked if she was refusing to do her job, and if so, she would be sent home without pay.  (Doc. 44 at 18.)  Plaintiff refers to this incident as a threatened

18

discharge which is direct evidence of discrimination because it would not have happened had she not been disabled.  (*Id.*) Defendants argue that, because they took no action as a result of the incident, it cannot serve as direct evidence of discrimination. (Doc. 45 at 5.)

We find that the incident in question reveals a lack of sensitivity and an unfortunate supervisory approach to dealing with a problem related to an employee's known disability.  However, at this stage of the proceedings we cannot say that it is so revealing of discriminatory animus that it presents direct evidence of discrimination.  Because, as discussed below, we conclude that Plaintiff's evidence is sufficient to survive summary judgment under either theory, at this stage of the proceedings we will not rule on which theory applies.  We make this decision because we find that the record is not sufficiently developed on the event in question for us to determine the proper weight to attribute to it.

## ii.  *Merits of Disparate Treatment Claim*

We conclude that dismissal of Plaintiff's disability claim based on disparate treatment is not proper because Defendant's have not shown that no genuine issue of material fact exists regarding this claim and Plaintiff has produced sufficient evidence to survive summary judgment.

### - *Plaintiff's Prima Facie Case*

As discussed above, a plaintiff must first make out the three elements of a *prima facie* case of discrimination and here

Defendants do not dispute the first two elements. *See supra* p. 7. However, they maintain Plaintiff cannot show that she suffered an adverse employment action or that Defendants failed to provide her with a reasonable accommodation. (Doc. 39-9 at 4.) We have discussed the reasonable accommodation basis of Plaintiff's claim and we will now address whether Plaintiff suffered an adverse employment action for the purpose of the disparate treatment basis of her claim.

While at first considering constructive discharge the only adverse action asserted by Plaintiff, (Doc. 39-9 at 5), Defendants acknowledge that Plaintiff now identifies eight separate "adverse actions," (Doc. 45 at 6). They conclude that viewed separately or collectively the incidents cited to not rise to the level of adverse action. (*Id.* at 7.)

Plaintiff identifies the following adverse actions: 1) the threat of being sent home would lead to discharge; 2) being forced to work in a closet; 3) being forced to used headsets that caused pain; 4) receiving discipline for not meeting productivity standards because she had to hold her headset with one hand; 5) not being allowed to transfer once she was disciplined; 6) denial of her request to perform offline work; 7) not being allowed to be promoted; and 8) being constructively discharged. (Doc. 44 at 22.)

We do not find that each of Plaintiff's claims can be considered an adverse employment action, but "a discrimination

analysis must concentrate not on individual incidents, but on the overall scenario." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997).  Where a plaintiff alleges discrimination based on individual incidents or separate categories of conduct, a court should look at both the individual allegations and the larger picture they present in concert.  *See*, *e.g.*, *Shaner*, 204 F.3d at 503 n.9.

Looking at Plaintiff's allegations from both perspectives, we conclude Plaintiff has produced sufficient evidence to satisfy this element of her claim at the summary judgment stage.

The conduct alleged regarding Plaintiff being told to work with the headset provided or go home without pay in and of itself cannot be considered unlawful discrimination or an adverse employment action.  However, this incident could serve as evidence of the negative attitude toward finding a reasonable accommodation which Plaintiff attributes to Defendants.

We cannot say as a matter of law that Plaintiff's being given a DN performance rating could not constitute an adverse employment action.  Courts have held that a poor performance rating in itself does not constitute an adverse employment action.  *See, e.g., Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).  However, such a rating coupled with evidence that the employer has used it to the plaintiff's detriment may be considered an adverse employment action.  *See, e.g., Spears v. Missouri Dep't*

*of Corrections and Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).   Under the ADA, discrimination in job training is specifically stated to be actionable.   42 U.S.C. § 12112(a).   "A plaintiff who is alleging discrimination with respect to . . . [an] enumerated action[] [is not required] to also show the action was materially adverse."   *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575 (7th Cir. 2001).   Whether denial of training constitutes an adverse employment action is a fact specific inquiry which may present a jury question.   *Shaner v. Synthes*, 204 F.3d 494, 503-04 (3d Cir. 2000).

Defendants take issue with Plaintiff's characterization of her DN appraisal, stating that it does not constitute "discipline" or a formal appraisal.   (Doc. 45 at 7.)   They also aver that Plaintiff did not make the currently asserted allegations in her deposition.[3] (*Id.*)   However, Defendants do not argue that the rating had no effect on Plaintiff's employment opportunities.

Here, Plaintiff's DN rating allegedly prevents her from being transferred or promoted as well as making her ineligible for certain training opportunities.   While Defendants contest

---

[3]   Our review of Plaintiff's deposition testimony provided, (Doc. 39 Ex. B), reveals that Plaintiff referenced the issues now raised in some form.   When Defendants questioned Plaintiff about what evidence supported her claims, the questions were phrased in terms of whether there was anything "that you haven't testified to today," (Doc. 39-2 Ex. M at 164:20-21), or "other than what you testified to previously today," (*id.* at 166:2-3).   With questions asked in this form, any previous testimony about an issue can be considered support for Plaintiff's claims.

Plaintiff's assertions regarding transfer and promotion, they cannot argue that the rating did not affect a training opportunity for Plaintiff.  This is so because, referring to Plaintiff, Defendant Petrosky stated: "*since she is an overall DN in performance*, she was not being scheduled for CAG at this time."[4] (Doc. 39-2 Ex. M (emphasis added).)  Therefore, because Plaintiff's DN rating affected job training, the rating may serve as an adverse employment action.

Another basis upon which a reasonable jury may be able to find an adverse employment action is Plaintiff's assertion that she was not allowed to do offline work.  (Doc. 44 at 22.)  Denial of a

---

[4] First, we note that Plaintiff does not specifically list a denial of the CAG training opportunity as an adverse action in her opposition brief, (Doc. 44).  However, insofar as it is related to her DN rating claim and she references CAG training elsewhere, (*see, e.g.*, Doc. 44 at 12), we consider the job training issue here.

The record is unclear as to what, if any, other opportunities were affected by the DN rating.  Defendants assert that Plaintiff did not apply for a promotion or transfer.  (Doc. 45 at 8.)  We will discuss the transfer issue as it relates to Plaintiff's request to do offline work in the text.  However, in response to Defendant's assertion, we note that in the Title VII context, the Supreme Court held that failure to apply for a position does not preclude recovery in some circumstances.  *International Bhd. of Teamsters v. United States*, 431 U.S. 432, 367-68 (1977).  The Court explained: "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."  *Id.* at 365-66.  With this note, we make no determination as to the application of the Court's holding to the case at bar.

request to transfer to a position where conditions were more favorable constitutes an adverse employment action.  *See, e.g.*, *Meckenberg v. New York City Off-Track Betting*, 42 F. Supp. 2d 359, 378 (S.D.N.Y. 1999).  Although Defendants do not consider Plaintiff's request to do offline work a transfer request because it is "merely one possible function for a Maintenance Administrator," (Doc. 45 at 8), it is plausible that a change in function could be termed a transfer as it is a movement from one situation to another.  *See Webster's New Collegiate Dictionary* 1231 (1973).  Thus, we conclude we cannot decide on summary judgment whether the denial of Plaintiff's request to do offline work constitutes an adverse employment action.

Regarding constructive discharge, we conclude that viewing the evidence in the light most favorable to Plaintiff, we cannot say that she has not produced sufficient evidence to survive summary judgment.  To find a constructive discharge, "[s]pecifically, a court must determine whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (internal quotation and citation omitted).

Seen in the light most favorable to Plaintiff, the record can be seen to support the proposition that Plaintiff worked from September 2002 until July 2003 without being reasonably

24

accommodated for her disability: 1) during this time, she did not
have a headset which fit properly and did not cause discomfort
and/or cause her performance rating to decline; and 2) she was
refused the alternative accommodation she requested (being allowed
to do offline work).  Further, Plaintiff's DN performance rating
affected employment opportunities, and when she said she could not
work with the accommodation provided, she was told she would be
sent home without pay if she continued to refuse.

     First, the credibility of the parties on these matters is
important and something that cannot be determined on summary
judgment.  Second, while Plaintiff's case may be thin, looking at
the evidence in the light most favorable to Plaintiff and making
every reasonable inference from it, we think that a jury could find
that a reasonable person with a hearing impairment may have felt
compelled to resign.  It is not unreasonable that the following
factors in sum could be found to make the situation objectively
intolerable: after attempting to procure a properly fitting headset
for over nine months, one had not been found and Plaintiff had no
certainty that one could be found in the future; an alternative
(and assertedly available) accommodation had been refused;
Plaintiff had a negative performance rating which, in the absence
of accommodation, would be difficult to improve and could have
implications beyond being denied CAG training and the opportunity

to transfer or be promoted;[5] and the experience of a negative interaction/confrontation related to the disability.  Although there is no dispute that Plaintiff resigned under the EISP, if her situation before she took the leave or accepted the EISP is found to have been intolerable, her constructive discharge claim may succeed.  On the other hand, development of the issue at trial may reveal that Plaintiff's situation, while unpleasant, was not sufficiently unbearable to be termed a constructive discharge.

Defendants analogize this case to *Duffy* and contend that the events Plaintiff relies upon here do not come close to the required "'continued pattern of harassment'" so intolerable that a reasonable person subject to them would resign.  (Doc. 39-9 at 8 (quoting *Roche v. Supervalue*, 1999 WL 46226 (E.D. Pa. Jan. 15, 1999), aff'd 193 F.3d 514 (3d Cir. 1999)).)  We are not persuaded by Defendants' arguments.  First, as noted previously, *see supra* p. 22 n.3, Defendants read the basis of Plaintiff's claim too narrowly.  Second, a continual pattern of harassment is not always required to support a constructive discharge claim.  *Duffy*, 265 F.3d at 168-69 & n.2.  Finally, this case is distinguishable from *Duffy.*  The following examples highlight some differences: 1) here

---

[5] The record is not clear on the status of Plaintiff's performance rating throughout the interactive process up until the time she took the leave in July 2003.  Making every inference in her favor, as we must at this stage of the proceedings, if Plaintiff's difficulties with her headset accommodation caused ongoing performance problems, stress and employment longevity issues could be implicated.

Plaintiff received a negative performance rating which related to her disability where in *Duffy*, the negative aspects of the plaintiff's evaluation were longstanding; 2) here Plaintiff worked in pain directly related to the provided accommodation where in *Duffy* the plaintiff's physical problems were assertedly related to the stress of the job; and 3) here Plaintiff did not obtain relief for her disability related problem before she left her employment in that she allegedly did not receive a properly fitting headset and no alternative accommodation had been provided where in *Duffy* the plaintiff admitted that she received relief for some of her complaints. *See Duffy*, 265 F.3d at 169-70.  While these and other possible distinctions (including the fact that *Duffy* was an ADEA claim) are not indicative that Plaintiff will succeed on her constructive discharge claim, they undermine Defendants' reliance on the case.

For all of the above reasons, we conclude that Plaintiff may be able to show an adverse employment action and thereby satisfy the elements of her *prima facie* case.

**– Defendants' Legitimate Reasons for Their Actions**

Having found that Plaintiff may be able to satisfy the elements of her *prima facie* disparate treatment claim, assuming *arguendo* that *McDonnell Douglas* applies, we turn to step two of the analysis to determine whether Defendants meet their burden of coming forward with legitimate nondiscriminatory reasons for their

actions.

Defendants assert that the legitimate nondiscriminatory reasons for their actions are 1) they attempted in good faith to accommodate Plaintiff's disability; and 2) Plaintiff volunteered to leave Verizon pursuant to the EISP.  (Doc. 39-9 at 15.)

Although under *McDonnell Douglas* Defendants' burden at this stage is one of production, Defendants' proffered reasons are not responsive to the question of why they took some of the actions Plaintiff has alleged.  *See supra* p. 20.  For example, although the proffered reason that Defendants were trying to accommodate Plaintiff's disability may answer why Plaintiff was assigned to work in the meeting room/closet and why she used ill-fitting headsets, it does not answer why her supervisors engaged in the threatening behavior alleged, why she received a negative performance evaluation regarding productivity during the time when accommodation was being sought or why she was not permitted to perform other functions when a properly fitting headset could not be found.

Defendants' second reason - Plaintiff left Verizon voluntarily pursuant to the EISP - may be responsive to Plaintiff's constructive discharge allegation but not to the remainder of her claims.

Because of the deficiency in Defendants' proffered non-discriminatory reasons, we are inclined to find that Defendants

have not met even their minimal burden of production.
However, even if we were to find that Defendants met this burden,
we would conclude that Plaintiff's disparate treatment claim can go
forward because Plaintiff would be able to satisfy her burden at
the third stage of the *McDonnell Douglas* analysis.

**– *Validity of Defendants' Proffered Reasons***

We conclude that Plaintiff can meet her summary judgment
burden at this stage of the analysis.

Here we are to focus "on whether there is sufficient evidence
from which a jury could conclude that the purported reasons for [a]
defendant's adverse employment actions were in actuality a pretext
for intentional disability discrimination." *Shaner*, 204 F.3d at
501. At this stage of the analysis, a plaintiff can defeat a
motion for summary judge by pointing "to some evidence, direct or
circumstantial, from which a factfinder would reasonably either:
(1) disbelieve the employer's articulated legitimate reasons or (2)
believe that an invidious discriminatory reason was more likely
than not a motivating or determinative cause of the employer's
action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiff has presented some evidence that supervisory
personnel were hostile on at least one occasion regarding her
difficulty with a provided accommodation. As discussed previously,
Defendants have not provided an adequate rationale for their
failure to consider alternative accommodations or the negative

29

consequences accruing to Plaintiff during the search for a reasonable accommodation.  While this evidence may be insufficient to succeed at trial, it is enough that we can say a factfinder may disbelieve Defendants' articulated reasons.  Therefore, Plaintiff has met her burden at this stage of the analysis and her discrimination claim based on disparate treatment may go forward.

**2.   *Harassment Claim***

We conclude that Defendants are entitled to summary judgment on Plaintiff's harassment claim.

To succeed on a harassment claim, a plaintiff must prove the following:

> 1) she is a qualified individual with a disability under the ADA; 2) she was the subject of unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that [her employer] knew or should have known of the harassment and failed to take prompt remedial action.

*Walton v. Mental Health Assoc. of Southeastern Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999) (citations omitted).  In making the determination whether a work environment is hostile or abusive, all the circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work

30

performance." *Id.* (internal quotation omitted).

Plaintiff cites the same actions in support of her harassment claim as she does for her disparate treatment claim. (Doc. 44 at 31-32.) While we concluded that Plaintiff may be able to succeed on her discrimination claim based on disparate treatment and failure to accommodate, we come to the opposite conclusion here. Defendants actions may be found to be discriminatory but, under all the circumstances, Plaintiff has not produced evidence that these same actions amount to harassment. Here, the potential deficiencies in Defendants' handling of Plaintiff's disability can be attributed as much to inaction as to specific actions. The elements of this cause of action contemplate an active campaign or sufficiently severe individual acts to create liability. We do not find that the one confrontation between Plaintiff and her supervisory personnel where she was told she may be sent home without pay if she refused to take calls is sufficiently severe to sustain a harassment cause of action. Even if coupled with Plaintiff's receipt of a negative performance evaluation, these two actions - over a nine-month period - are not sufficient to sustain a harassment claim.

### 3. Retaliation Claim

We conclude that Plaintiff has proffered sufficient evidence to survive summary judgment on her retaliation claim.

The ADA provides: "No person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  "It is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003).

A retaliation claim is considered under the same analytical framework as a disparate treatment claim. *See supra* pp. 16-19.  To prove a *prima facie* claim of retaliation a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Defendants acknowledge that Plaintiff's request for accommodation is a protected activity.  (Doc. 39-9 at 21; Doc. 44 at 19.)  However, they argue Plaintiff cannot establish that she suffered any adverse action as a result of her protected activity. (*Id.*)

For the reasons discussed in our analysis of Plaintiff's accommodation and disparate treatment claims, we find that Defendants define the basis of Plaintiff's claims too narrowly.

32

*See supra* p. 22 n.3.  Just as we found with her disparate treatment claim, here we conclude that Plaintiff may be able to show that she was subject to adverse employment action.  Insofar as the actions complained of took place over a period of time following her request for accommodation, the timing requirement of a retaliation claim may be satisfied.

Defendants assert that Plaintiff's retaliation claim is duplicative of her discrimination claims.  (Doc. 45 at 20.)  They assert the same nondiscriminatory reasons for their actions and maintain they are entitled to summary judgment for the same reasons set forth in their discussion of the discrimination claims.  (*Id.*)  Because of the similarity of these claims and the parties' arguments, we need not repeat our disparate treatment analysis here.  Based on our finding that Plaintiff has produced sufficient evidence to survive summary judgment on her disparate treatment claim and our conclusion that she can satisfy the additional timing requirement of a retaliation claim, summary judgment is not proper on her retaliation claim.

**4.   *PHRA Claims Against Individual Defendants Torcasi and Fisher*[6]**

We conclude these claims cannot go forward because Plaintiff

---

[6] The analysis of Count III - Plaintiff's PHRA claims for discrimination, failure to accommodate, harassment and retaliation - is the same under the ADA and PHRA.  *See*, *e.g.*, *Taylor*, 184 F.3d at 306.  Therefore, as with the ADA claims, Defendants are entitled to summary judgment on Plaintiff's PHRA harassment claim and her PHRA claims based on discrimination, accommodation and retaliation go forward.

has not produced sufficient evidence to survive summary judgment.

In Count IV of her Complaint, Plaintiff asserts individual claims against Defendants Torcasi and Fisher pursuant to section 955(e) of the PHRA.  She avers that, as supervisors, they were aiding and abetting Verizon when they discriminated against Plaintiff based on her disability, failed to provide her with an appropriate accommodation and disciplined her in retaliation for requesting accommodation.  (Doc. 44 at 33.)

Section 955(e) states that it is an unlawful discriminatory practice

> For any person, employer, . . .  or employee,
> to aid, abet, incite, compel or coerce the
> doing of any act declared by this section to
> be an unlawful discriminatory practice, or to
> obstruct or prevent any person from complying
> with the provisions of this act or any order
> issued thereunder, or to attempt, directly or
> indirectly , to commit any act declared by
> this section to be an unlawful discriminatory
> practice.

43 Pa. C.S. § 955(e).

Defendants maintain that there is no basis in the record to conclude that either Defendant aided or abetted disability discrimination and, further, direct incidents of discrimination or harassment are not covered by the terms of § 955(e).  (Doc. 39-9 at 25.)  Defendants aver that Plaintiff's claim is based on two incidents.  (*Id.* at 26.)  "During one meeting with plaintiff regarding her refusal to take calls with the headset she had been using, Defendant Fisher asked Plaintiff several times if she was

34

refusing to do her job." (Doc. 39-9 at 26.)  The second incident
relates to the first: "Petrosky told plaintiff that Torcasi
instructed her to tell plaintiff that she had to either work with
the headset she had, or to go home without pay." (*Id.*)

Defendants contend that the cited conduct is not
discriminatory. (*Id.* at 26-27.)  They further argue that, even if
it could be considered so, the alleged actions are direct incidents
of discrimination for which they cannot be held individually
liable. (*Id.* at 27.)

Plaintiff avers that under § 955(e) supervisors can be held
individually liable for direct acts of discrimination or for
failure to take action to prevent further discrimination by an
employee under supervision. (Doc. 44 at 33.)  She further avers
that, since Defendants engaged in their own acts and failed to
accommodate and correct the hostile environment, she has raised a
sufficient issue of fact to allow this count to go forward. (*Id.*)

We conclude that we need not decide the parameters of § 955(e)
because the only specific evidence Plaintiff presents regarding
Defendants Torcasi and Fisher is that identified by Defendants.
While Plaintiff now refers to a broad range of conduct attributable
to Defendants Torcasi and Fisher, these vague generalities cannot
serve to satisfy her burden.  Her deposition testimony reveals that
the only *conduct* in which Torcasi and Fisher were implicated
related to the incident where she was told she would either have to

35

work with the accommodation provided or go home without pay.  As discussed above, *see supra* p. 21, this incident in and of itself does not constitute unlawful discrimination.  Therefore, without evidence that Torcasi and Fisher were involved in more than this incident, Plaintiff's claim against these Defendants cannot go forward.  Plaintiff's citations to the record do not reveal any specific examples of greater involvement.  Therefore, Defendants' motion for summary judgment is granted on this claim.

### III. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment, (Doc. 39), is granted as to the harassment claims in Counts I and III, and Count IV.  The motion is denied on all other claims.  Therefore, Count I goes forward based on Plaintiff's accommodation and disparate treatment claims; Count II goes forward in its entirety; and Count III goes forward as to Plaintiff's claims regarding accommodation, disparate treatment and retaliation.  An appropriate Order follows.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: August 23, 2005 _____

36

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VIRGINIA ALLEN,                    :
                                   :CIVIL ACTION NO. 3:04-CV-1515
        Plaintiff,                 :
                                   :
            v.                     :(JUDGE CONABOY)
                                   :
VERIZON PENNSYLVANIA, INC.,        :
                                   :
        Defendant.                 :
_____

## ORDER

AND NOW, THIS 23rd DAY OF AUGUST 2005, FOR THE REASONS SET FORTH IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.  "Motion of Defendants Verizon Pennsylvania, Inc., Colleen Torcasi and Elaine Fisher for Summary Judgment," (Doc. 39), is GRANTED IN PART and DENIED IN PART;

2.  The motion is GRANTED as to the harassment claim in Count I;

3.  The motion is Granted as to the harassment claim in Count III;

4.  The motion is GRANTED as to Count IV;

5.  The motion is DENIED as to the remaining bases of Count I, Count II and the remaining bases of Count III of Plaintiff's Complaint;

6.  Plaintiff's Complaint, (Doc. 1), goes forward as to Count I based on accommodation and disparate treatment, Count II and Count III based on accommodation, disparate

37

treatment and retaliation;

7.   The Clerk of Court is directed to mark the docket.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge